**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| DONALD EBNER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2018-CV-2 |
| | ) | |
| THE BANK OF NOVA SCOTIA, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DONALD EBNER'S MEMORANDUM LAW IN SUPPORT OF OPPOSITION**
**TO THE BANK OF NOVA SCOTIA'S MOTION TO DISMISS OR FOR**
**SUMMARY JUDGMENT**

## I.   INTRODUCTION

The Bank of Nova Scotia's ("Scotiabank") motion for summary judgment distorts the record beyond recognition and labels facts undisputed that are in fact hotly disputed.  There is no basis for summary judgment here - not even close. In fact, there is clear evidence supporting Ebner's claim that Scotiabank failed to timely renew his windstorm insurance in violation of both RESPA and its escrow duties, leaving Ebner uninsured when Hurricane Maria struck St. Croix and damaged Ebner's home.

Scotiabank's central argument is that it had no duty to renew Ebner's homeowner's insurance. In making this argument, Scotiabank ignores a key fact — that it acted as Ebner's escrow agent for purposes of paying taxes and insurance premiums. As escrow agent, Scotiabank was duty-bound under both RESPA and its escrow agreement to timely pay Ebner's homeowner's premiums. It is undisputed that beginning in 2014 through 2017, Scotiabank stopped paying Ebner's insurance premiums, even though Ebner had escrowed sufficient funds to pay the premiums. The

failure to pay the premiums violated RESPA and breached Scotiabank's duty as escrow agent.

Scotiabank argues that Ebner failed to provide it with renewal notices from his homeowner's insurance. That is true — but beside the point. The evidence shows that Ebner's insurance company, Real Legacy, sent renewal notices directly to Scotiabank and that Scotiabank in fact renewed the insurance and paid the escrowed premiums in 2011, 2012, and 2013 without Ebner providing renewal notices or premium invoices. Thus, Scotiabank's failure to renew his insurance and pay his premiums beginning in 2014 had nothing to do with Ebner's failure to provide renewal notices. Because Scotiabank was acting as Ebner's escrow agent, he had no responsibility for renewing the insurance or for providing renewal statements.

Contrary to Scotiabank's argument, Ebner has alleged that he suffered actual damages as a result of Scotiabank's RESPA violations. And the evidence proves this damage, which includes the cost of repairs to his home, lost rental income, and emotional distress damages.

Scotiabank's motion to dismiss or for summary judgment should be denied.

## II.   THE FACTS

In July 2010, Ebner purchased a single family home in Estate Judith's Fancy, St. Croix. Ebner financed the purchase by obtaining a real estate mortgage loan from Scotiabank's branch office in St. Croix. Declaration of Donald Ebner ("Ebner Decl.") ¶ 2. The mortgage loan agreement required Ebner to maintain windstorm insurance on the property and to make monthly payments to the loan servicer for deposit into an escrow account for the payment of the insurance premiums. *Id*.; Exh. 1 at 3. Under the

agreement, the loan servicer, acting as escrow agent, was responsible for timely renewing of Ebner's windstorm insurance each year.  Ebner Decl. ¶ 2; Exh. 1 at 3.

Ebner understood that Scotiabank was the servicer of his loan.  Scotiabank never informed Scotiabank that a company called Cenlar was the loan servicer, and Ebner never received any correspondence from Cenlar.  Ebner Decl. ¶ 2.

Ebner obtained windstorm insurance from Real Legacy Insurance Company when he bought his home in 2010 and timely made all escrow payments to Scotiabank to maintain that insurance policy.  *Id.* ¶ 3.

The Real Legacy policy had a one-year term, renewable on July 14 of each year.  *Id.*  Scotiabank renewed Ebner's windstorm insurance with Real Legacy in July 2011, July 2012, and July 2013, paying the annual premiums from Ebner's escrow account.  *Id.*; Exh. 2.

During this time, Ebner never received renewal notices from Real Legacy, and yet Scotiabank renewed the insurance each year.  Ebner Decl. ¶ 3.  Rather Real Legacy sent the renewal notices directly to Scotiabank. Scotiabank produced one of those notices in its initial  disclosures.  Exh. 3.

In July 2014, however, Scotia failed to timely pay the annual premium to Real Legacy from Ebner's escrow account even though the account contained sufficient funds to make the payment. Ebner Decl. ¶ 3.  Ebner's loan history statement proves both of these facts. Exh. 2.  As a result, the Real Legacy policy lapsed for non-payment.  Exh. 4.

After allowing the Real Legacy policy to lapse, Scotia used Ebner's escrowed funds to purchase force-placed insurance from a company called American Standard Insurance Co. ("ASIC"). Scotia paid ASIC $14,403 from Ebner's escrow account in September 2014. Exh. 2. In July 2015, Scotia paid ASIC $14,843 from Ebner's escrow

account. *Id*. In July 2016, Scotia paid ASIC $13,543 from Ebner's escrow account. *Id*. In July 2017, Scotia paid ASIC $13,528 from Ebner's escrow account.  *Id*.

Scotia never notified Ebner that it had failed to pay the premium to Real Legacy and that his policy had lapsed as a result.  Ebner Decl. ¶ 5.  Nor did it inform Ebner that it had purchased force-placed coverage with his escrowed funds.  *Id*. ¶ 7.

Scotiabank has attached three letters as exhibits to its motion for summary judgment.  Scotiabank purportedly sent the letters to Ebner in 2014, informing him that he failed to provide proof of windstorm insurance and that a force-placed policy would be purchased for his property. But Ebner did not receive these letters until October 2017.  Ebner Decl. ¶ 10.  In any event, Scotiabank, as escrow agent,  was responsible for renewing Ebner's insurance, so no proof from Ebner was ever required. Indeed, Scotiabank renewed his insurance without receiving proof from him in 2011, 2012, and 2013.  *Id*. ¶ 3.

 On September 19, 2017, Hurricane Maria struck St. Croix, causing extensive damage to the island.  Ebner's home was damaged in the storm.  Ebner Decl. ¶ 5.  On September 27, 2017, Ebner filed a claim with Real Legacy.  *Id*.  Real Legacy informed Ebner the next day that his policy had lapsed for non-payment in July 2014.  *Id*.  This was the first time Ebner became aware that Scotia had failed to pay the premium to Real Legacy and that his policy had lapsed as a result.  *Id*.

Ebner emailed Scotia and asked it to explain why it had failed to pay the Real Legacy premium and allowed the Real Legacy policy to lapse. *Id*. ¶ 6. Scotia refused to provide an explanation. It informed Ebner that it had obtained force-placed insurance coverage for his home but would not give Ebner the name of the force-placed insurer. *Id*. Ebner asked Scotia to file a claim with the force-placed insurer on his behalf and to

request that the insurer send an adjuster to inspect the damage to his home.   Scotia refused to file a claim.  *Id.*

As it turns out, Scotiabank did not file a claim on behalf of Ebner because its ASIC policy lapsed in August 2017, and Scotiabank failed to insure his property with another insurer despite continuing to charge him premiums. Ebner Decl. ¶ 13; Exh. 5.

After repeatedly refusing to provide Ebner the name of the force-placed insurer covering his property, Scotiabank finally told Ebner that his property was insured under a policy issued by Integrand Assurance Co.  Ebner Decl.  ¶ 17.  That was false.  In April 2018, Integrand sued Scotiabank for declaratory relief.  Exh. 6.  In that lawsuit, Integrand alleges that Scotiabank failed to insure its Virgin Islands properties with Integrand before the hurricanes and unsuccessfully tried to obtain retroactive insurance from Integrand for its Virgin Islands properties after the hurricanes.  *Id.*  ¶¶ 29-43.

After this lawsuit was filed, Scotiabank hired an adjuster to inspect Ebner's home. The adjuster told Ebner that Scotiabank hired him — not an insurance company.  Ebner Decl. ¶ 12.  Scotiabank refused to provide Ebner with a copy of the adjuster's damages estimate. *Id.*

Scotiabank later paid Ebner $190,000 as a partial settlement payment. *Id.*  ¶ 16. Scotiabank tried to falsely characterize the payment as an insurance payment, but the payment came from Scotiabank and there was no insurance covering Ebner's property. *Id.*  Ebner did not sign a release or waiver in exchange for Scotiabank's payment.  *Id.*

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of a plaintiff's complaint.  In deciding a motion to dismiss the complaint, the court must

accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d224, 233 (3d Cir. 2008).

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). But more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### B.   Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter *185 of law." Fed.R.Civ.P. 56(a). The initial burden is on the party seeking summary judgment to point to the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine

issue for trial " and do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted).

## IV.    EBNER'S RESPA CLAIM IS TIMELY

Ebner alleges that Scotiabank violated § 2605(g) of RESPA by failing to timely make payments to his insurer from his escrow account in 2014, 2015, 2016 and 2017. Scotiabank not only failed to make timely payments, it made no payments at all.

Scotiabank argues that Ebner's claim under §2605(g) is time-barred by RESPA's three-year statute of limitations set forth in 12 U.S.C. § 2614.  That is wrong.

Ebner filed his Complaint in January 2018.  Therefore, his RESPA claims based on Scotiabank' failure to timely make insurance payments to Real Legacy in July 2015, 2016 and 2017 were brought within three years of those violations and are clearly not time-barred.

As for his claim based on Scotiabank's failure to pay his insurance premium in 2014, that claim is also timely by virtue of the discovery rule. The federal discovery rule provides that a claim does not accrue, and the statute of limitations does not begin to run, until (1) a "party performs the alleged unlawful act" and (2) "the party bringing a claim discovers an injury resulting from this unlawful act." *See Doe v. Paukstat* 863 F.Supp. 884, 889 (E.D.Wis.1994). Courts have held that the discovery rule applies to RESPA claims. *See Estate of Henderson ex rel. Johnson v. Meritage Mortg. Corp.*, 293 F.Supp.2d 830, 833–35 (N.D.Ill. 2003) (applying the discovery rule to RESPA when plaintiff had Alzheimer's); *but see See Perkins v. Johnson,* 551 F.Supp.2d 1246, 1254 (D.Colo.2008) ("the federal discovery rule is inapplicable to the RESPA statute of

limitations because Congress explicitly denoted that the statute begins to run 'from the date of the occurrence,' rather than 'when the action accrues'").

Ebner did not discover that Scotiabank failed to pay his insurance premium to Real Legacy in 2014 until September 2017, when he attempted to file an insurance claim and was told by Real Legacy that his insurance had been cancelled in 2014 for non-payment.  Ebner Decl. ¶ 5.  Thus, under the discovery rule, Ebner's RESPA claim based on Scotiabank's 2014 violation did not accrue until 2017 and is not time-barred.

Scotiabank argues that Ebner was put on notice of its RESPA violation when it sent him a letter on July 24, 2014, stating that he failed to provide it with proof of windstorm insurance.  But Ebner denies he received this letter, or any other letter, relating to proof of insurance until after the September 2017 hurricanes.  Ebner Decl. ¶ 10.  Therefore, whether Ebner had notice of the violation in 2014 is a question of fact for the jury.

## V.   THE COMPLAINT STATES A CLAIM UNDER RESPA BASED ON SCOTIABANK'S FAILURE TO TIMELY PAY INSURANCE PREMIUMS

### A.   Section 2605(g) Claim

Scotiabank argues that Ebner has not stated a claim under §2605(g).  This argument fails.  The Complaint states a plausible claim under RESPA.

Section 2605(g) of RESPA provides:

> If the terms of any federally related mortgage loan require the
> borrower to make payments to the servicer of the loan for deposit into
> an escrow account for the purpose of assuring payment of taxes,
> insurance premiums, and other charges with respect to the property,
> the servicer shall make payments from the escrow account for such

taxes, insurance premiums, and other charges in a timely manner as
such payments become due.

To state a claim under § 2605(g), the plaintiff-borrower must allege : (1) he had a
federally related mortgage loan; (2) the terms of the loan agreement require him to
make payments to an escrow account; (3) he owed taxes or premiums that were to be
paid out of the escrow account; (4) the defendant-servicer failed to make such payments
in a timely manner; and (5) at the time the tax or premium was due, he was not more
than 30 days delinquent in making mortgage payments. *Hyderi v. Washington Mut.
Bank, FA*, 235 F.R.D. 390, 399 (N.D.Ill. 2006).

Ebner has alleged all of these facts.  The Complaint alleges that the loan
agreement required him to escrow funds for taxes and insurance; that Scotiabank was
obligated to use these funds to pay his insurance premiums; and that Scotiabank failed
to timely make the payments in 2014, 2015, 2016 and 2017.  Complaint ¶¶ 22-25.

Scotiabank argues that it did not violate §2605(g) because Ebner failed to renew
his Real Legacy policy and failed to send premium invoices to Scotiabank for payment.
This argument is bogus.  It ignores Scotiabank's duties under RESPA as escrow agent.
*See Gladstein v. Aurora Loan Servs., LLC,* 2013 WL 637040, at *9 (N.D. Ga.)  (holding
that plaintiff stated a claim under §2605(g) by alleging that his loan agreement required
him to escrow an amount sufficient to cover his homeowner's insurance premiums, that
defendants were responsible for paying his homeowner's insurance premiums out of the
escrow funds, and that defendants failed to pay the premiums).

Nothing in §2605a(g) puts the burden of renewal on the borrower.  Rather, the
statute contemplates that the loan servicer, as escrow agent, has the responsibility to
renew the policy by paying the premiums "as such payments become due."  12 U.S.C. §

2605(g).   And that is exactly what Scotiabank did in July 2011, July 2012 and July 2013 - it renewed Ebner's Real Legacy policy and paid his premiums without ever receiving a renewal notice or a premium invoice from Ebner.  Ebner Decl. ¶ 3.  Scotiabank received the renewal notices directly from Real Legacy and paid the premiums without any involvement by Ebner in the process.  *Id*.; Exh. 3.  Thus, it is simply not true that Scotiabank failed to pay Ebner's premiums in 2014-2017 because he did not renew the insurance and did not provide Scotiabank with premium invoices.

Scotiabank argues that it is not liable under RESPA because it was not Ebner's loan servicer.  The Complaint alleges that Scotiabank was the loan server at all relevant times.  Complaint ¶ 6.  And the evidence shows that all of the communications Ebner received from Scotiabank regarding his loan were on Scotiabank letterhead and Ebner was never informed that an entity other than Scotiabank was his loan servicer.  Ebner Decl. ¶ 2.  So at the very least, there is an disputed issue of fact as to whether Scotiabank was the loan servicer.

In any event, even if Scotiabank was not the loan servicer, it is still liable under RESPA.  That is because RESPA does not limit liability to servicers.  "A mortgagee or noteholder that does not service its own loan can be held liable where the servicer acting on its behalf fails to abide by [RESPA's requirements].  *Rouleau v. US Bank, N.A.,* 2015 WL 1757104, at *7 (D.N.H. Apr. 17, 2015)

Finally, Scotiabank argues that Ebner tried to renew his insurance in 2014 but received a notice from Real Legacy that his credit card was declined.  This is highly misleading.  The payment that Ebner attempted to make was for a different property (165 Judith's Fancy) with no connection whatsoever to Scotiabank.  Ebner Decl. ¶ 13.

### B.    Section 2605(k) Claim

The Complaint also alleges a claim under § 2605(k), which provides that a loan servicer shall not "obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance." 12 U.S.C. § 2605(k).

Ebner has stated a claim under this section.  The Complaint alleges that Ebner complied with terms of his mortgage agreement by escrowing sufficient funds to pay his Real Legacy premiums.  Complaint ¶¶ 22-25.  Scotiabank lacked a reasonable basis to obtain force-placed insurance for Ebner.  As shown above, Ebner had no obligation to provide Scotiabank with renewal notices or premium invoices because Scotiabank was his escrow agent and dealing directly with Real Legacy.

## VI.    EBNER SUFFERED DAMAGES AS A RESULT OF SCOTIABANK'S VIOLATION OF RESPA

Scotiabank argues that Ebner has not alleged or actually suffered any damages as a result of its failure to pay his insurance premiums.  That is wrong.

Section 2605(f) of RESPA governs damages for violations of RESPA's provisions. It provides that an individual may recover  an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f).

A plaintiff alleging RESPA violation must allege facts sufficient to "raise a right to relief above the speculative level." *See Hutchinson v. Delaware Savings Bank FSB,* 410 F.Supp.2d 374, 383 (D.N.J. 2006).  A plaintiff need only (1) allege a breach of a RESPA duty, and (2) that the breach resulted in actual damages.  *Id.*

Here, the Complaint alleges that Ebner suffered actual damages as a result of Scotiabank's failure to timely pay his insurance premiums, including "the total amount of the premiums paid from his escrow account for force-placed insurance, the cost of repairs to his home, and lost rental income." Complaint ¶ 25.  These allegations are sufficient to state a claim for actual damages under RESPA.

Moreover, the record evidence shows that Ebner suffered actual damages as a result of Scotiabank's violation.  First and foremost, Scotiabank's failure to pay Ebner's premiums resulted in the cancellation of Ebner's Real Legacy insurance policy, leaving him uninsured when Hurricane Maria damaged his home.  Scotiabank insists Ebner was insured, claiming it purchased force-placed insurance to cover his home in 2017.  But that is a flat-out lie.  The evidence shows that Scotiabank's force-placed insurance policy with ASIC lapsed in August 2017.  Exh. 5.  Scotiabank claims it obtained force placed insurance from Integrand effective August 1, but the evidence shows that is not true. Scotiabank refused to provide Ebner with an insurance certificate from Integrand, and Integrand never contacted Ebner nor sent an adjuster to assess the damage to his home. Ebner Decl. ¶ 17. Moreover, Integrand sued Scotiabank for declaratory relief in April 2018, alleging that Scotiabank failed to insure its Virgin Islands properties with Integrand before the September hurricanes and that there is no coverage for these properties.[1] Exh. 6. The lawsuit further alleges that Scotiabank attempted to retroactively insure the Virgin Islands properties with Integrand but that Integrand refused to participate in this ploy.  Id. ¶¶ 29-43.

---

[1] *The Court can take judicial notice of the Integrand complaint.  See Ennenga v. Starns, 677 F.3d 766, 773 (7th Cir. 2012) (holding that in considering a motion to dismiss, courts may take judicial notice of facts readily ascertainable from the public court record)].*

Second, Ebner lost rental income as a result of Scotiabank's failure to renew his policy. That is because Scotiabank's actions left him uninsured and unable to repair his property to make it habitable for tenants. Ebner Decl. ¶ 14.

Finally, Ebner has suffered emotional distress. The lack of insurance caused Ebner significant stress and anxiety, and he feared losing his home in foreclosure. Ebner Decl. ¶ 14. In fact, Scotiabank sent him a foreclosure notice after the hurricane. *Id*. ¶ 15;  Exh.  7. As a result of lost income, Ebner had fallen behind on his mortgage payments.

The law is clear that RESPA entitles plaintiffs to recover emotional distress damages. *See Ploog v. Homeside Lending, Inc.*,209 F.Supp.2d 863, 870 (N.D.Ill. 2002) ("the Court holds that RESPA is a consumer protection statute and RESPA's actual damages provision includes recovery for emotional distress."); *Mclean v. GMAC Mortgage Corporation,* No. 06–22795–CIV, 2008 WL 1956285, *11 (S.D.Fla. May 2, 2008) ("The Court is persuaded by the rationale in Rawlings and finds that non-pecuniary damages are recoverable as "actual damages" under section 2605."); *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F.Supp.2d 1156, 1166–67 (M.D.Al.1999) ("actual damages" as used in § 2605(f) of RESPA encompasses mental anguish damages.").

After this lawsuit was filed, Scotiabank hired an adjuster to inspect Ebner's home and paid Ebner $191,161.74.  Scotiabank paid this money to Ebner as a partial damage payment to limit its exposure. Scotiabank represented that the payment was an insurance settlement.  That is false.  The payment came from Scotiabank, not from an insurer, and Ebner did not sign a release or waiver in exchange for the payment.  Ebner Decl. ¶ 17. Moreover, the payment does not cover all of the damage to Ebner's home.

## VII.   THE COMPLAINT STATES CLAIMS FOR BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY

Scotiabank argues that Ebner fails to state plausible claims for breach of contract and breach of fiduciary duty.  Again, Scotiabank is wrong.

In the Virgin Islands, a claim for breach of contract has four elements: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." Bank of Nova Scotia v. Ross, 2012 WL 4854776, at *4 (D.V.I. Oct. 12, 2012).

The Complaint states a claim for breach of contract.   It alleges that the mortgage agreement requires Ebner to escrow funds for windstorm insurance and obligates Scotiabank to pay the premiums with the escrowed funds; that Ebner escrowed sufficient funds to pay the premiums; and that Scotiabank breached the mortgage agreement by failing to pay Ebner's insurance premiums out of his escrow account. Complaint ¶¶ 32-36.

The Complaint also states a claim for breach of fiduciary duty. It alleges Scotiabank  acted as Ebner's escrow agent and therefore owed him a fiduciary duty to exercise reasonable care and ordinary diligence.  Complaint ¶ 27.   And it alleges that Scotiabank  breached its fiduciary duty to Ebner by failing to timely pay his insurance premium to Real Legacy and by misusing the escrowed funds to pay for unnecessary force-placed insurance.  *Id.*  ¶ 28.

Scotiabank argues that it did not owe Ebner a fiduciary duty because the mortgage agreement is an arms-length transaction.  But Scotiabank required Ebner to escrow funds and therefore assumed the duty as his escrow agent.  An escrow agent owes the parties to the transaction a fiduciary duty.  *Qube Films Ltd. v.* Padell, 2014 WL 3952931, at *7 (S.D.N.Y. Aug. 12, 2014); *see also Wall Street Mortgage Bankers, Ltd. v.*

_Attorneys Title Ins. Fund, Inc._, 2008 WL 5378126, at \*3 (S.D. Fla. Dec. 23, 2008) ("[The escrow holder] breached its duty when it disbursed Plaintiff's money that it had held in escrow without first obtaining a deed.  These allegations state a claim for breach of fiduciary duty.").

In sum, the Complaint states claims for breach of contract and breach of fiduciary duty.

## VIII.  CONCLUSION

For the foregoing reasons, Scotiabank's motion to dismiss or for summary judgment should be denied.

**COLIANNI & COLIANNI**
Attorneys for Plaintiff

DATED: August 14, 2018          By:    /s/Vincent Colianni, II
                                        Vincent Colianni, II
                                        Vincent A. Colianni
                                        1138 King Street
                                        Christiansted, VI 00820
                                        Telephone: (340) 719-1766
                                        Facsimile: (340) 719-1770
                                        mailbox@colianni.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of August, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Carol Ann Rich, Esq.
Dudley Rich, LLP
5194 Dronningens Gade, Ste. 3
St. Thomas, VI 00802
crich@dudleylaw.com

/s/Vincent Colianni, II
Vincent Colianni, II
Vincent A. Colianni
1138 King Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Telephone: (340) 719-1766
Fax: (340) 719-1770