# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

DONALD EBNER,

        Plaintiff,

v.

THE BANK OF NOVA SCOTIA,

        Defendant.
_____

1:18-cv-00002

TO:    Marina Leonard, Esq.
         Vincent Colianni, II, Esq.
         Carol Ann Rich, Esq.

## MEMORANDUM OPINION[1]

THIS MATTER is before the Court on Defendant Bank of Nova Scotia's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 19). Plaintiff filed an opposition (ECF No. 26), and Defendant filed a reply (ECF No. 33). On December 19, 2018, the Court heard arguments on the motion and requested additional briefing, which the parties provided. (ECF Nos. 50, 51). For the reasons discussed below, the Court will grant the motion.

**I. SUMMARY OF FACTS**

In 2010, Plaintiff Donald Ebner purchased a house in Estate Judith's Fancy, St. Croix. Compl. (ECF No. 1) ¶ 4. Ebner financed the purchase with a mortgage from Scotiabank,

---

[1] The undersigned issues this opinion pursuant to the Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (ECF No. 40) executed by the parties, and the Order Referring Case to Magistrate Judge (ECF No. 41), entered by Chief Judge Wilma A. Lewis.

which has a branch office in St. Croix. *Id*. ¶ 5. Under the terms of the mortgage, Ebner was required to maintain windstorm insurance on the property.[2] Plaintiff purchased the initial windstorm insurance policy from Real Legacy at the time the mortgage was signed. *Id*. ¶¶ 6-7. The terms of the mortgage also required Ebner to make regular payments into an escrow account from which all future insurance premiums were to be paid. *Id*. ¶¶ 6-7. The insurance premium payments were paid from the escrow account to Real Legacy each July of the years 2011, 2012, and 2013. The premium was not paid in 2014, and consequently the insurance policy lapsed. *Id*. ¶¶ 7-9.

In September 2014, Scotiabank purchased force-placed insurance (FPI) for the property and paid the premium with funds from Ebner's escrow account. *Id*. ¶¶ 10-13. In September 2017, Ebner's home was damaged during Hurricane Maria. After the hurricane, Ebner contacted Real Legacy insurance and was informed that his windstorm insurance policy had lapsed three years earlier. *Id*. ¶¶ 14-15.

Ebner commenced suit against Scotiabank on January 30, 2018, alleging a federal claim under § 2605(g) of the Real Estate Settlement Procedures Act (RESPA) and claims for breach of fiduciary duty and breach of contract. *Id*. ¶¶ 22-37. On July 18, 2018, Scotiabank filed the subject motion. Mot. (ECF No. 21) at 10-11. In its motion, Scotiabank argues that

---

[2] "Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires." Mortgage (ECF No. 22-3) ¶ 5.

because RESPA's three-year statute of limitations has expired, this Court lacks jurisdiction and Ebner's Complaint must be dismissed. *Id*. at 8-9.

## II. LEGAL STANDARDS

### 1. Jurisdiction

Subject-matter jurisdiction "refers to a tribunal's 'power to hear a case.'" *Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 82 (2009) (citations omitted). Dismissal pursuant to 12(b)(1) is proper only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946). A case arises under federal law where it is clear on the face of the complaint that the cause of action was created by federal law. 28 U.S.C. § 1331; ERWIN CHEMERINSKY, FEDERAL JURISDICTION 303 (2016). District courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

### 2. RESPA Statute of Limitations

> Any action pursuant to the provisions of section 6, 8, or 9 [12 USCS § 2605, 2607, or 2608] may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 6 [12 USCS § 2605] and 1 year in the case of a violation of section 8 or 9 [12 USCS § 2607 or 2608] from the date of the occurrence of the violation, except that actions brought by the Bureau, the Secretary, the Attorney General of any State, or the insurance

>commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

12 U.S.C. § 2614.

### 3. Summary Judgment

A moving party will prevail on a motion for summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is deemed genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to prove that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In reviewing a motion for summary judgment, the Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

As the Supreme Court has held:

>"[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some **metaphysical doubt** as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,

> 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original). Moreover, summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III. DISCUSSION

### 1. Jurisdiction

District courts have jurisdiction over civil actions arising under the laws of the United States. 28 U.S.C. § 1331. Ebner's Complaint states that he brings the subject action pursuant to § 2605(g) of the Real Estate Settlement Procedures Act (RESPA). Compl. ¶ 3; 12 U.S.C. § 2605(g). Accordingly, it is clear on the face of Ebner's Complaint that the cause of action was created by federal law.

RESPA provides that any action pursuant 12 U.S.C. § 2605 may be brought in the United States District Court for the district in which the property is located or where the violation occurred. 12 U.S.C. § 2614. Here, the property involved is located in St. Croix and Scotiabank has an office here. Accordingly, the Virgin Islands District Court has jurisdiction.

"A district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the

defendant's conduct violated a federal statute." *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1281 (3d Cir. 1993). Section 2605(g) of RESPA provides:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

12 U.S.C. § 2605(g). Ebner's Complaint alleges that Scotiabank violated 12 U.S.C. § 2605(g) by failing to timely pay the insurance premium for his mortgaged Virgin Islands property from his funded escrow account when the policy became due and, as a result, Ebner suffered damages. Compl. ¶¶ 9, 24, 25. Accordingly, this Court has federal question jurisdiction pursuant to RESPA.

Dismissal pursuant to 12(b)(1) is proper only when the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr*, 926 F.2d at 1409. As evidenced by this Court's Order directing supplemental briefing, the Court did not find Ebner's Complaint to be "wholly insubstantial and frivolous." *Id.* at 1409; Order (ECF No. 47). Accordingly, the Court declines Scotiabank's request to dismiss Ebner's Complaint under Rule 12(b)(1).

**2. RESPA Statute of Limitations**

A claim under 12 U.S.C. § 2605 may be brought within three years from the date of "the occurrence of the violation." 12 U.S.C. § 2614. Ebner's Complaint alleges that Scotiabank was required to timely pay the annual insurance policy that covered his home

and failed to do so when the premium came due in July 2014. Compl. ¶¶ 9, 23. Scotiabank responds that because Ebner filed suit on January 30, 2018, the action is time-barred. Def's Mem. (ECF No. 21) at 11.

A RESPA claim that is time-barred may be rescued by equitable tolling or by the continuing violations doctrine.[3] Equitable tolling can rescue a claim that is otherwise time-barred when a plaintiff has been prevented from timely filing due to "sufficiently inequitable circumstances." *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016) (quoting *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). Here, beyond stating that he did not receive notice that his Real Legacy policy was not renewed, Ebner proffered no argument for equitable tolling. Consequently, equitable tolling will not rescue his RESPA claim.

The continuing violations doctrine is applied where a defendant's illegal conduct constitutes a pattern or practice that continues into the statute of limitations. Where the doctrine is applied, the statute of limitations runs from the date of the most recent violation. *White v. PNC Fin. Servs. Group*, 2017 U.S. Dist. LEXIS 3240, at *36 (E.D. Pa. Jan. 9, 2017). Ebner alleges that his insurance company, Real Legacy, mailed an insurance renewal to Scotiabank in 2014 and that Scotiabank received it. (ECF No. 1) at 8-9. Ebner supports this allegation with his loan history statement, which shows that Scotiabank paid the

---

[3] Plaintiff's argument for the application of the discovery rule is fruitless. In *Cunningham,* the Third Circuit explained that the discovery rule may not be applied to RESPA claims "because Congress specifically provided that the limitations period begins to run on 'the date of the occurrence of the violation.'" *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 162 (3d Cir. 2016).

insurance premiums in 2011, 2012, and 2013. Opp'n at 3; Exhibit 2 (ECF No. 26-3). He buttresses his allegation by stating that he never received any insurance renewal notices from Real Legacy and he never personally asked Scotiabank to pay the insurance. In other words, even though Ebner never contacted Scotiabank about his insurance policy renewal, Scotiabank paid the Real Legacy policy in 2011, 2012, and 2013. Therefore, it was reasonable for him to assume that Scotiabank would pay it in the same fashion thereafter. Opp'n at 2, 11.

Scotiabank states that "Ebner's insurance policy with Real Legacy was renewed for the periods 2011-2012, 2012-2013, and 2013-2014, and Scotiabank received proof of each renewal." (ECF No. 22) at ¶ 10. Scotiabank neither affirms nor denies receiving any renewal notice including a renewal notice in 2014, nor does it state if it knows why the bill was not paid. Instead, Scotiabank states only that "[t]he Real Legacy policy was not renewed in July 2014." *Id.* at ¶ 12; (ECF No. 33) at 1. As will be discussed below, Scotiabank was well aware that upon receipt of a renewal notice, it was obligated to pay the insurance from the funds it required Ebner to escrow.

The Court finds that it was objectively reasonable for Ebner to assume that Real Legacy would mail a renewal notice and that Scotiabank would pay the 2014 insurance bill. However, there is no evidence in the record to show that a renewal notice was, actually, mailed to Scotiabank. And, even if the Court was to find that a notice was sent in 2014, that date is outside RESPA's three-year statute of limitations and so, for his claim to survive,

Ebner must show that Scotiabank received notice that his insurance policy was due in 2015, 2016, or 2017.

In support of his allegation that Real Legacy mailed insurance renewal notices in 2015, 2016, and 2017, Ebner proffers a theory. The theory is, that because Scotiabank paid the insurance premiums in 2011, 2012, and 2013, it must have received renewal notices for those years. Ebner goes on to theorize that if Scotiabank received renewal notices in 2011, 2012, and 2013, it must have received notices for all the years thereafter.[4] Opp'n at 9-10. Even though the Court agrees that it is reasonable to assume that Real Legacy mailed a renewal notice in 2014, the theory that Real Legacy mailed annual renewal notices after the policy lapsed for non-payment is neither logical nor grounded in reality. The theoretical possibility that Real Legacy mailed a renewal notice for the subsequent year or two or three years after Ebner's insurance policy lapsed is simply not sufficient to show that there is a genuine issue for trial.[5]

For the Court to apply the continuing violations doctrine, Ebner must show that Scotiabank engaged in an illegal pattern or practice that continued into the statute of limitations period. In the Third Circuit, cases that have addressed the applicability of the continuing violations doctrine to RESPA claims are distinguished from this case in that

---

[4] Plaintiff's statements are reproduced below.

[5] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Such affirmative evidence -- regardless of whether it is direct or circumstantial -- must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

those cases were brought under § 2607, while Ebner's claim is brought under § 2605. For example, in *White,*[6] the plaintiffs brought claims alleging that the defendants carried on a "captive reinsurance scheme in which the defendants enjoyed kickbacks, referrals, and fees that are prohibited by RESPA." *Id*. at *2. Defendants moved to dismiss plaintiffs' RESPA claims as time-barred. The Court denied the defendants' motion finding that, "assuming the veracity . . . of plaintiffs' allegations," the defendants violated RESPA each time "an allegedly illegal kickback, fee, or referral was given or received . . . [and therefore,] the statute of limitations runs from the date of the last RESPA violation rather than the first." *Id*. at *36.

The *Menichino*[7] Court reached the opposite conclusion. In that case, also for alleged captive reinsurance kickbacks, the court found that "the application of a continuing violations theory would extend indefinitely the limitations period for private plaintiffs suing under [RESPA] and create a limitations period that is longer than Congress could have contemplated." *Id*. at *43 (quoting *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356 (5th Cir. 2003) (internal quotations omitted).

There being no binding precedent in the Third Circuit, and the above cases being brought pursuant to 12 U.S.C. § 2607, the Court will examine the subject pleadings to discern whether Ebner's continuing violations argument is persuasive. Ebner alleges that

---

[6] *White v. PNC Fin. Servs. Group*, 2017 U.S. Dist. LEXIS 3240 (E.D. Pa. Jan. 9, 2017). *See also Blake v. JPMorgan Chase Bank, N.A.,* 2018 U.S. Dist. LEXIS 52167, at *17 (E.D. Pa. Mar. 28, 2018) ("RESPA would be violated each and every time an unlawful fee or kickback was accepted or delivered. Each allegation resets RESPA's [§ 2607] one-year statute of limitations, regardless of plaintiffs' earlier notice of the wrongdoing.").

[7] *Menichino v. Citibank, N.A.*, 2013 U.S. Dist. LEXIS 101102 (W.D. Pa. July 19, 2013).

Scotiabank's *failure to pay* is a continuing violation in that Scotiabank is required under RESPA to timely pay insurance premiums as they become due. 12 U.S.C. § 2605(g).

As to the character, or quality, of an act that demonstrates a continuing violation, the Court finds *Havens Realty Corp. v. Coleman*[8] instructive. In *Havens,* plaintiffs alleged that the defendant engaged in "racial steering" by telling African-American applicants there were no apartments available to rent while telling Caucasian applicants that apartments were available. *Id*. at 368. There, three plaintiffs alleged "five different specific incidents in violation of the Fair Housing Act." *Id*. at 380. The defendant countered that four of the five claims were time-barred because the claims were not brought within the statute of limitations. However, because the defendant's conduct consisted of "five different specific incidents," the Supreme Court found that the defendant engaged in a "pattern, practice, and policy" of discriminatory activity. *Id.* at 380-381.

The *Havens* plaintiffs made five separate visits on five separate occasions to enquire about apartments. Each time, at each visit, the individual was told there were no apartments available. The Court finds that *Havens, White,* and *Blake*, cited above, show that the character, or quality, of a continuing violation is an affirmative act. In *Havens*, the defendant *told* the visitor there were no apartments. In *White* and *Blake*, the defendants *delivered* or *accepted* unlawful kickbacks. In this case, Ebner alleges that Scotiabank *did not pay* Real Legacy's annual insurance renewal notices for four consecutive years. However, to

---

[8] 455 U.S. 363, 368 (1982).

plead a continuing violation under § 2605(g), Ebner needed to show that Scotiabank *had notice* that the insurance *was due* and *did not pay it*. Accordingly, the Court finds that Ebner's pleadings describe continued ill-effects rather than continuing violations.

Continued ill-effects are the consequences that flow from an illegal affirmative act. For example, in *Tearpock-Martini v. Borough of Shickshinny*,[9] the continued presence of an offensive sign was an effect of the "last affirmative act," which was the "physical installation of the sign." *Id*. at 237. In *Cibula v. Fox*,[10] the abuse and harassment a prisoner endured was "best viewed as 'merely the consequences of the original act of deeming [him] a sex offender.'" Accepting Ebner's allegations as true, Scotiabank's failure to pay the 2014 renewal was an affirmative act that violated RESPA. That the policy then remained cancelled was the ill-effect of that act. Accordingly, Ebner has pled a single violation—failure to pay the 2014 insurance premium—and that violation is outside the statute of limitations. Consequently, Ebner's RESPA claim is time-barred.

### 3. Summary Judgment

#### A. Breach of Fiduciary Duty

Ebner alleges that as his escrow agent, Scotiabank owed him a fiduciary duty, which it breached when it failed to timely pay the Real Legacy insurance premium. Ebner further alleges that as a result of Scotiabank's breach, he suffered direct and consequential

---

[9] 756 F.3d 232, 237 (3d Cir. 2014).

[10] 570 Fed. Appx. 129, 136 (3d Cir. 2014).

damages. Compl. ¶¶ 27-30. Scotiabank rejects any proposition that the transaction between the parties conferred a duty of care. Scotiabank contends that a mortgage does not create a fiduciary relationship between a lender and a borrower. Rather, argues Scotiabank, the "relationship was a pure commercial transaction." Def's. Mem. at 18-19. Ebner responds that Scotiabank assumed the duty of escrow agent when it required him to fund an escrow account for the purpose of paying insurance premiums. (ECF No. 26) at 14.

A claim for breach of fiduciary duty must establish a fiduciary relationship, breach of the duty imposed by that fiduciary relationship, and harm proximately caused by said breach. *Watts v. Blake–Coleman,* 2012 U.S. Dist. LEXIS 43454 at *13-14 (D.V.I. March 29, 2012). In the Virgin Islands, a fiduciary relationship exists where one of the parties is under a duty to act "for the benefit of another upon matters within the scope of the relation." *Roebuck v. V.I. Hous. Auth. & Gov't of the V.I.*, 2014 V.I. LEXIS 31, at *19 (V.I. Super. Ct. May 7, 2014) (citation omitted). While "Virgin Islands courts have been cautious in finding the existence of a fiduciary relationship even as between a bank and one of its customers," *Id.* at *14, where a bank "knows or has reason to know that the customer is placing his trust and confidence in [it]" such circumstance may arise. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 554 (N.J. Super. Ct. App. Div. 1997).

In this case, the mortgage document commands the borrower (Ebner) to fund an escrow account for the purpose of paying certain lender-required items, including insurance premiums. The document shows that Scotiabank controlled the escrow funds

and, it imposes a duty to act in that it directs Scotiabank to pay said escrow items in accordance with RESPA. Mortgage (ECF No. 22-3) at 3-4. RESPA requires that payments from an escrow account must be made as "such payments become due." 12 U.S.C. § 2605(g).

As shown above, the mortgage document demonstrates that Scotiabank knew that Ebner was placing his trust in it to responsibly manage the funds held in escrow. Accordingly, Scotiabank owed Ebner a duty of care with respect to the handling of said escrow funds including the duty to pay insurance premiums in a timely manner as they became due. However, Scotiabank did not have a duty under the mortgage to obtain windstorm insurance for Ebner nor to seek renewal of the policy. Here, the Court cannot find that Scotiabank breached any fiduciary duty it owed to Ebner.

As explained above, Ebner has failed to provide any evidence that Real Legacy mailed or that Scotiabank received an insurance renewal notice in 2015, 2016, or 2017. The court agrees that Scotiabank owed Ebner the highest fiduciary duty with respect to the management and maintenance of said escrow funds. However, under RESPA, Scotiabank was not obligated to pay Ebner's insurance premium until the payment "became due." 12 U.S.C. § 2605(g). Here, payment become due when Scotiabank received a renewal notice. Accordingly, absent evidence that Real Legacy mailed or that Scotiabank received an insurance renewal notice within RESPA's three-year statutory time period, Ebner's breach of fiduciary duty claim must fail.

### B. Breach of Contract

To state a claim for breach of contract a movant must show that the parties entered into an agreement, that a duty was created by that agreement, a breach of that duty, and damages. *Bank of Nova Scotia v. Ross*, 2012 WL 4854776, at *11 (D.V.I. Oct. 12, 2012); *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 620 (V.I. 2017). Exhibits filed in the record confirm that the parties entered into an agreement. In that agreement, Ebner was duty-bound to fund an escrow account and Scotiabank was duty-bound to pay escrow items according to the time specified under RESPA. (ECF No. 22-3) at 3-4. As Scotiabank's duty to pay the escrow items arose from the RESPA statute, the Court finds that the three-year statute of limitations applies.

The parties do not dispute that under the terms of the mortgage, Scotiabank had no duty to obtain windstorm insurance for the property. The mortgage agreement expressly placed the burden of obtaining windstorm insurance on Ebner. Thus, as a matter of law Ebner cannot establish that Scotiabank breached its contract with Ebner by failing to obtain windstorm insurance for him.

A moving party will prevail on a motion for summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the movant, Scotiabank, is silent as to whether it ever received any insurance renewal notices, stating only that it received proof that the insurance was paid in 2011, 2012, and 2013 and that the insurance was not

paid in 2014. (ECF No. 22) at ¶¶ 10, 12. The Court agreed above that based on the evidence, it was reasonable for Ebner to assume that Scotiabank would pay the insurance in 2014. Scotiabank neither confirms nor denies receipt of a renewal notice in 2014. However, Scotiabank submits to the Court that it sent "dozens of letters" to Ebner notifying him that his insurance was expiring, that his insurance had lapsed, and that it had purchased FPI for his home.[11] Def's Reply (ECF No. 33) at 3, 7. Ebner denies receiving any letters from Scotiabank regarding his insurance policy.[12]

Although there is clearly a dispute over the receipt of mail, Ebner does not dispute that the address that appears on the letters is the address he had on file with Scotiabank. Mot. (ECF No. 21) at 6; Plaintiff's Resp. to Undisputed Facts, (ECF No. 27) at ¶¶ 15-16. Regulation X, issued by the Bureau of Consumer Financial Protection to implement RESPA, deems mailing of documents satisfied by "placing the document in the mail."[13] Scotiabank states that the above referenced letters were "sent to Ebner." Affidavit of Adonis R. Morton, Exhibit A (ECF No. 22-1). Therefore, Scotiabank argues, it complied with RESPA's requirements.

---

[11] Exhibits A-5–A-13 (ECF Nos. 22-6–22-14).

[12] (ECF No. 27) at ¶¶ 13-14, 17-18, 19-25.

[13] "The provisions of this part requiring or permitting mailing of documents shall be deemed to be satisfied by placing the document in the mail (whether or not received by the addressee) addressed to the addresses stated in the loan application or in other information submitted to or obtained by the lender at the time of loan application or submitted or obtained by the lender or settlement agent, except that a revised address shall be used where the lender or settlement agent has been expressly informed in writing of a change in address." 12 C.F.R. § 1024.11

While Scotiabank focuses its argument on Ebner's obligation to obtain insurance, Ebner focuses his argument on Scotiabank's obligation to pay the insurance. Ebner states that in light of the fact that Scotiabank received insurance renewal notices in 2011, 2012, and 2013,[14] it must have received notices in the same fashion thereafter. However, Ebner has not provided any facts nor submitted any evidence, other than his own statements, to show that a dispute about the insurance renewal notices is genuine.[15]

Ebner's Complaint states that,

> Scotia renewed Ebner's windstorm insurance with Real Legacy in July 2011, July 2012, and July 2013, paying the annual premiums from Ebner's escrow account. In July 2014, however, Scotia failed to timely pay the annual premium to Real Legacy from Ebner's escrow account even though the account contained sufficient funds to make the payment.

Compl. ¶¶ 8, 9. In response to Scotiabank's motion for summary judgment, Ebner reiterated his position:

> The evidence shows that Ebner's insurance company, Real Legacy, sent renewal notices directly to Scotiabank and that Scotiabank in fact renewed the insurance and paid the escrowed premiums in 2011, 2012, and 2013 without Ebner providing renewal notices or premium invoices. Thus, Scotiabank's failure to renew his insurance and pay his premiums beginning in 2014 had nothing to do with Ebner's failure to provide renewal notices. Because Scotiabank was acting as Ebner's escrow agent, he had no responsibility for renewing the insurance or for providing renewal statements.

---

[14] Plaintiff reaches this conclusion based on the fact that Defendant paid the 2011, 2012, and 2013 insurance bills as shown in his mortgage payment history. Opp'n at 3; Exhibit 2 (ECF No. 26-3).

[15] A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Plaintiff's Opposition to Defendant's Motion for Summary Judgment, (ECF No. 26) at 2. In his Declaration, Ebner stated:

> I obtained windstorm insurance from Real Legacy Insurance Company when I bought my home in 2010 and timely made all escrow payments to Scotiabank to maintain that insurance policy.
>
> The Real Legacy policy had a one-year term, renewable on July 14 of each year. Scotiabank renewed my windstorm insurance with Real Legacy in July 2011, July 2012, and July 2013, paying the annual premiums from my escrow account. These renewals are documented in the loan history report Scotiabank provided me upon demand in October 2017. During this time, I never received renewal notices from Real Legacy, and yet Scotiabank renewed the insurance each year. It appears that the Real Legacy sent the renewal notices directly to Scotiabank and, in fact, Scotiabank produced one of those notices in its initial disclosures, Bates No. BNS-DE 000029.
>
> In July 2014, however, Scotia failed to timely pay the annual premium to Real Legacy from my escrow account even though the account contained sufficient funds to make the payment. My loan history statement proves both of these facts. As a result, the Real Legacy policy lapsed for non-payment.

Declaration of Donald Ebner (ECF No. 26-1) at ¶ 3.

Apart from these statements, Ebner presents no evidence to support his allegation that Real Legacy mailed, or that Scotiabank received an insurance renewal notice in 2015, 2016, or 2017. Even after Scotiabank suggested that Ebner could support his assertion that Real Legacy mailed renewal notices to Scotiabank with an affidavit from Real Legacy, Ebner proffered nothing more. Def's Reply (ECF No. 33) at 4. That Ebner did not present any evidence to show that insurance renewal notices were sent in 2015, 2016, or 2017 is consistent with the fact that the Real Legacy policy lapsed in 2014.[16]

---

[16] Plaintiff's Exhibit 4, email from Real Legacy confirming policy lapse in 2014, (ECF No. 26-5).

The undisputed facts and the evidence in the record show that Ebner's Real Legacy policy was not paid in 2014, the policy lapsed for non-payment, and Scotiabank sent notices to Ebner regarding the same. Based upon the foregoing, the Court finds that there is no genuine dispute as to any material fact. For that reason, and because Ebner did not demonstrate that Scotiabank violated RESPA within the statute of limitations, the Court finds that no reasonable jury could return a verdict in Ebner's favor.

## IV. CONCLUSION

Having reviewed the briefs and other submissions of the parties and the record before it and viewing the undisputed material facts in the light most favorable to Plaintiff, for the reasons discussed hereinabove, the Court has determined that no genuine issue of material fact exists, and Defendant is entitled to judgment as a matter of law. Consequently, the Court will grant the motion in favor of Defendant. An appropriate Order accompanies this Memorandum Opinion.

ENTER:

Dated: January 31, 2019 　　　　　　　　　　　/s/ George W. Cannon, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　GEORGE W. CANNON, JR.
　　　　　　　　　　　　　　　　　　　　　　　　MAGISTRATE JUDGE